### UNITED STATES v. MAX MAYER & CO.

(Circuit Court, S. D. New York. November 6, 1908.)

No. 5,181.

CUSTOMS DUTIES (§ 37*)—GLOVES—MEASUREMENT—"EXTREME LENGTH."

   In Tariff Act July 24, 1897, c. 11, § 1, Schedule N, par. 439, 30 Stat. 192 (U. S. Comp. St. 1901, p. 1676), it is prescribed that in determining the length of gloves for duty purposes "the lengths stated in each case" shall be "the extreme length when stretched to their full extent." *Held*, that slight accidental excesses over the lengths mentioned in the law may be disregarded.

   [Ed. Note.—For other cases, see Customs Duties, Dec. Dig. § 37.*]

In the decision below the Board of General Appraisers reversed the decision by the collector of customs at the port of New York, holding that he had proceeded illegally in the ascertainment of the dutiable length of imported gloves. So far as pertinent, the opinion of the Board reads as follows:

McCLELLAND, General Appraiser. * * * It appears from the record that various lots of gloves on the invoices covered by the protests, described as "14-inch" and "17-inch" gloves, were found to be respectively over these measurements, and so returned by the appraiser. The collector, following the returns by the appraiser, assessed duties accordingly, and the importers complain that, in so far as the amounts of duty assessed were increased by being based on measurements greater than 14 inches and 17 inches, the assessments were erroneous. The three paragraphs of the existing tariff act which reg-

ulate the assessment of duty according to length on the gloves involved are as follows (Tariff Act July 24, 1897, c. 11, § 1, Schedule N, pars. 439, 441, 30 Stat. 192 [U. S. Comp. St. 1901, pp. 1676, 1677]):

"439. Gloves made wholly or in part of leather, whether wholly or partly manufactured, shall pay duty at the following rates, the length stated in each case being the extreme length when stretched to their full extent, namely:

"440. Women's or children's 'glace' finish, schmaschen (of sheep origin) not over fourteen inches in length, one dollar and seventy-five cents per dozen pairs; over fourteen inches and not over seventeen inches in length, two dollars and twenty-five cents per dozen pairs; over seventeen inches in length, two dollars and seventy-five cents per dozen pairs; men's 'glace' finish, schmaschen (sheep) three dollars per dozen pairs.

"441. Women's or children's 'glace' finish, lamb or sheep, not over fourteen inches in length, two dollars and fifty cents per dozen pairs; over fourteen and not over seventeen inches in length, three dollars and fifty cents per dozen pairs; over seventeen inches in length, four dollars and fifty cents per dozen pairs; men's 'glace' finish, lamb or sheep, four dollars per dozen pairs."

It is shown by the evidence that the 14-inch gloves returned as being over that length exceed 14 inches by from one-eighth to one-half an inch, and that the 17-inch gloves returned as being over that length range from 17⅛ to 17³/₁₆ inches. It is contended on behalf of the government that the language of paragraph 439 must be strictly construed, and that the mere fact that the gloves exceed the limitations or measurements mentioned in paragraphs 440 and 441, regardless of the insignificance of such excesses, makes them liable to the duties assessed; but we think that view is unreasonable. We cannot believe that Congress intended that such a narrow, hairsplitting construction should be placed upon these conditions, especially in the light of trade experience as shown by the uniform testimony of all the witnesses that there could result no possible advantage to either the seller or buyer of gloves from such infinitesimal excesses of measurement. The witnesses were united in saying that the gloves in question would be bought and sold as of 14 or 17 inches, and that no consideration whatever would be given to the apparent excesses of measurement. This fact is strengthened by the established custom of the domestic glove trade, which shows that gloves are not sold by length, but by the number of buttons, and under this usage a 14-inch glove is known as a 2-clasp or 6-button, a 17-inch glove as an 8 to 10 button, a 20-inch as a 12-button, and a 23-inch glove as a 16-button glove; and that it requires an excess of 1 inch over each of these measurements to admit of an additional button. The leather from which the gloves are made is of course flexible; and it is reasonable to assume, we think, that a glove cut therefrom to either the 14 or 17 inch length might easily be stretched one-half inch in excess of such measurement.

It would, in our opinion, work manifest injustice to the importer if the government's contention were upheld, and we therefore sustain the claim * * * that the gloves specified in the schedule marked "A" under item, case, and protest numbers are of the lengths indicated in said schedule and subject to duty accordingly.

J. Osgood Nichols, Asst. U. S. Atty.
Everit Brown, for the importers.

MARTIN, District Judge (orally). This is an appeal by the government from decisions of the Board of General Appraisers relative to the assessment of duty on certain gloves under paragraphs 439, 440, and 441 of the tariff act of 1897 (Act July 24, 1897, § 1, 30 Stat. 192 [U. S. Comp. St. 1901, pp. 1676, 1677]).

It is contended by the government that these gloves measured 14⅛ to 14½ inches and 17⅛ to 17³/₁₆ inches. It is claimed that the duty should be increased 50 cents per dozen for the fractional excess of

measurement, and that the language of paragraph 439 must be strictly construed. The Board of Appraisers state:

"We cannot believe that Congress intended that such a narrow, hairsplitting construction should be placed upon these provisions, especially in the light of trade experience as shown by the uniform testimony of all the witnesses that there could result no possible advantage to either the seller or buyer of gloves from such infinitesimal excesses of measurement."

From a careful examination of the record it appears that there was no possible advantage to either the seller or the buyer of the gloves in question from this "excess of measurement." Neither is the element of protection affected thereby. It is plainly evident from the samples that were before me that variation of an eighth or a quarter of an inch may be accounted for by the manner of making the glove, in the amount taken out in the stitching of seams; another variation may be accounted for in the difference in degree of elasticity of the material used; and still another variation by the amount of force employed in stretching the glove for measurement. The temperature at the time of the measurement of the glove may also vary it somewhat. In view of the fact that a glove that measures exactly 14 inches or an eighth or a fraction of an inch below sells for the same price as that of a glove a fraction of an inch longer, it would be unjust to assess a duty of 50 cents per dozen pairs more for the one than the other. It seems to me an unwise construction of the statute that works injustice. I concur with the decision of the Board of General Appraisers.

Decision affirmed.